GEORGE T. HORAN *vs.* BOSTON TRANSIT COMMISSION.

Suffolk.        March 21, 1917. — May 25, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Boston Transit Commission. Boston Elevated Railway Company. Statute, Construction.*

The provision of Spec. St. 1915, c. 293, § 1, that "The Boston transit commission shall construct a tunnel or subway" in the Charlestown district of the city of Boston "under the same provisions as to construction, payment and use that are provided by law for the construction, payment and use of the present tunnel under Washington Street in the city of Boston," incorporate by reference such portions of St. 1902, c. 534, as are pertinent and material.

The provisions of Spec. St. 1915, c. 293, § 1, do not require the Boston transit commission to proceed with the construction of the tunnel or subway therein described until the Boston Elevated Railway Company has consented to and has executed with the commission the contract for the sole and exclusive use of the tunnel or subway described in St. 1902, c. 534, § 10, and thereafter as provided in St. 1902, c. 534, § 19, the statute has been submitted for acceptance to the voters of the city at the next municipal election and has been accepted by them.

PETITION, filed in the Supreme Judicial Court on December 20, 1915, by an inhabitant of the city of Boston owning real estate abutting on Main Street, in that part of Boston called Charlestown, in front of which is the elevated structure of the Boston Elevated Railway Company, for a writ of mandamus directing the Boston transit commissioners "to commence the construction of a tunnel or subway forthwith in accordance with Spec. St. 1915, c. 293."

The answer stated in substance that the Boston Elevated Railway Company was not willing to enter into a contract with the city of Boston for the use and occupation of the tunnel, and that the respondents had been unable to proceed with its construction under the same provisions as to construction, payment and use as are provided by law for the construction, payment and use of the present tunnel under Washington Street in the city of Boston.

The petition was heard by *Crosby,* J., who found as a fact that

the Boston Elevated Railway Company had refused to enter into a contract with the city of Boston for the use and occupation of the tunnel provided for by the special act above described under the conditions specified by it in that act, and therefore ruled as matter of law that the respondents were not required to construct the tunnel in accordance with the act; and at the request of the petitioner reported the case for determination by the full court.

The material portions of Spec. St. 1915, c. 293, are as follows:

"SECTION 1.  The Boston transit commission shall construct a tunnel or subway from a point at or near City Square to a point at, near or beyond Sullivan Square in the Charlestown district of the city of Boston, under the same provisions as to construction, payment and use that are provided by law for the construction, payment and use of the present tunnel under Washington Street in the city of Boston."

Material portions of St. 1902, c. 534, are as follows:

"Section 1. . . . The structure for the two tracks especially adapted for elevated cars or trains, hereinafter called the tunnel, shall be begun immediately after the acceptance of this act by a majority of the voters of the city as hereinafter provided.  The structure for the remaining two tracks, hereinafter called the subway, shall be begun at such time after the expiration of one year from the completion of the tunnel as the commission and the Boston Elevated Railway Company, hereinafter called the company, may agree upon, or, in case of difference, as the board of railroad commissioners, hereinafter called the board, shall determine that the public interests require.  The structure or structures for all four tracks, with the appurtenances, or any part or parts thereof, may be begun at any time after the acceptance of this act by a majority of the voters of the city as hereinafter provided, if and so far as the commission deems it expedient and if the company by its board of directors consents thereto."

"SECTION 10.  The commission shall within ninety days after the passage of this act execute with the company, in the name of the city, the company consenting thereto, a contract in writing for the sole and exclusive use of the tunnel and subway and appurtenances for the period of twenty-five years from the beginning of the use of the tunnel, at an annual rental equal to four and

one half per cent of the net cost of the tunnel and subway, respectively, for the running of trains and cars therein, and for such other uses and upon such provisions and conditions, not affecting the term or rental, as the commission and the company may agree upon, or in case of difference, as the board may determine. The provisions of this act, in so far as they declare, define or establish the terms and conditions for the construction, tenure, maintenance and operation of said tunnel, subway and appurtenances, shall be embodied in and made part of said contract. The use of the tunnel or subway respectively shall begin when, in the opinion of the commission, a reasonable time after completion has been allowed for equipment. The net cost of the tunnel and subway respectively shall be deemed to include all expenditures incurred in acquisition and construction, including damages, expenses and salaries of the commission, and interest at three and one fourth per cent per annum on the debt incurred in construction prior to the beginning of the use. If the contract for the use of the tunnel and subway is executed as above provided the commission, upon the acceptance of this act by the voters of the city as hereinafter provided, shall proceed with the work of construction."

"SECTION 19. If the contract for the use of the tunnel and subway is executed by the commission and the company as hereinafter provided, this act shall be submitted for acceptance to the voters of the city at the next municipal election, and if accepted by a majority of those voting thereon at such election it shall thereupon take full effect. The city shall have, hold and enjoy in its private or proprietary capacity, for its own property, the existing subway, the East Boston tunnel, the Cambridge Street subway and the tunnel and subway built under this act, and all rents, tolls, income and profits from all contracts heretofore or hereafter entered into for the use of said subways or tunnels or any part thereof, and the same shall never be taken by the Commonwealth except on payment of just compensation: provided, however, that so much of such rents, tolls, income and profits as may be necessary therefor shall be paid into the respective sinking funds for the redemption of said bonds and used for the payment of the interest thereon."

*M. L. Fahey,* for the petitioner.

*G. A. Flynn,* for the respondents.

BRALEY, J.   The petitioner asks for process by mandamus to compel the respondents the Boston transit commission to construct a tunnel or subway from "a point at or near City Square to a point at, near or beyond Sullivan Square in the Charlestown district of the city of Boston" under the provisions of Spec. St. 1915, c. 293.   But while they are directed to construct the tunnel, § 1 states that the provisions as to construction, payment and use are to be the same as "provided by law for the construction, payment and use of the present tunnel under Washington Street in the city of Boston."   The St. of 1902, c. 534, in so far as pertinent and material having been thus incorporated by reference, the governing statute is to be read accordingly.   See St. 1907, c. 573; St. 1911, c. 741, § 8.   It follows that unless the Boston Elevated Railway Company consented to execute with the commission a contract for the sole and exclusive use of the tunnel or subway for a specified term of years at an annual rental after its construction, and thereupon the voters of the municipality had accepted the Spec. St. of 1915, c. 293, the commission could not have proceeded with the work of construction.   *Boston* v. *Talbot,* 206 Mass. 82.   *Sears* v. *Crocker,* 184 Mass. 586.   *Codman* v. *Crocker,* 203 Mssa. 146, 153, 154.   The material allegations of the answer not having been traversed are to be taken as true, (R. L. c. 192, § 5,) from which it clearly appears that having been duly requested by the commission to define its position, the company declined to take action, or to enter into any contract as required by the statute.

No failure by the respondents to comply with the act is shown.

*Order dismissing petition affirmed.*